IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DAWN BERTSCH PORTER, :
individually and as Administratrix :
Of the Estate of :
Leland Langston Porter, Deceased, :
: CIVIL ACTION NO.
Plaintiff, : 1:06-CV-1297-JOF
:
v. :
:
ELI LILLY AND COMPANY, :
:
Defendant. :

**OPINION AND ORDER**

This matter is before the court on Plaintiff's motion to vacate the court's April 25, 2007 order [55-1].

To rule on Plaintiff's motion, the court finds it necessary to review the procedural history of the matter. On April 19, 2007, Defendant filed a motion for a protective order to bar Plaintiff's noticed deposition of Eli Lilly's Chairman and Chief Executive Officer, Mr. Sidney Taurel. Defendant also filed a motion to expedite ruling on the motion for a protective order. On April 24, 2007, Plaintiff filed a response to the motion to expedite agreeing that the matter was an important one and that the court should address it as soon as practicable. The court received no other response from Plaintiff.

AO 72A
(Rev.8/82)

As such, in an order dated April 25, 2007, the court granted Defendant's motion for a protective order and motion to expedite. The court explained,

> Plaintiff's notice of deposition of Mr. Taurel falls outside the fact discovery period approved by the court in the Preliminary Planning Report and Discovery Schedule. Further, the allegations made by Mr. Virapen concerning Mr. Taurel are neither relevant to Plaintiff's claims in this lawsuit nor would they arguably lead to relevant evidence.

*See* Order, Apr. 25, 2007, at 2-3.

On April 27, 2007, Plaintiff filed the instant motion to vacate. Plaintiff's counsel avers that "we clicked too quick." *See* Motion, at 1. "The undersigned counsel was working on responses to both motions and anticipated filing them on the same day." *Id.* at 2. "Unfortunately, we clicked and filed the Response to the Motion to Expedite first, and then were not able to finalize and file our Response to the Motion for Protection by the end of the day. Our bad! We apologize to the Court. However, we certainly did not anticipate that the Court would rule on the Motion without considering our substantive Response." *Id.*

Since it does not assist in the resolution of the issues before the court to address the whys and wherefores of how Plaintiff's counsel came to respond only to the motion to expedite and the court came to do what it was specifically asked by both parties to do – that is, to rule on the motion for a protective order as expeditiously as possible – the court will consider Plaintiff's substantive response.

2

To review, Plaintiff filed suit against Eli Lilly & Company contending that her husband's use of Prozac caused him to commit suicide in 2003. Fact discovery closed in this case on February 9, 2007. Two months after that deadline, Plaintiff filed a notice to take the deposition of Mr. Taurel. Plaintiff avers that a former employee of Lilly named John (Rengen) Virapen contends that while working in Sweden for Eli Lilly in 1985, he (Mr. Virapen) attempted to bribe a Swedish regulatory official to expedite the approval of Prozac in Sweden. Mr. Virapen presumes that Mr. Taurel was aware of the attempted bribery because at the time Mr. Taurel was a Vice President for Lilly International in London, England, several layers removed in Mr. Virapen's supervisory chain of authority, and Mr. Virapen had been told by others that Mr. Taurel had to approve certain financial transactions.

Taking the matter in the order addressed by the court in its ruling, Plaintiff's counsel expends some efforts in his response discussing the collegial working relationship between the parties and asserting that Plaintiff's counsel had agreed to allow Lilly to take some fact depositions out of time. Plaintiff's counsel does recognize that the court does not enforce any "side agreements" on discovery issues. Plaintiff's counsel, however, asserts that the discovery period should be extended because (1) Mr. Virapen contacted Plaintiff's counsel "out of the blue" at the end of the discovery period, (2) Plaintiff's counsel warned Lilly that it would seek to depose Mr. Taurel, and (3) Plaintiff's counsel has allowed Lilly to take out-

3

of-time depositions. Plaintiff's counsel has not made a formal motion of the court to extend the discovery deadline for this matter (and did not do so before noticing the deposition). In any event, the court need not consider whether it would be appropriate to extend the discovery period under these circumstances because Plaintiff's counsel has failed to show that Mr. Taurel's testimony would be relevant to Plaintiff's claims.

 As part of the relevance discussion, the court must address Plaintiff's counsel's repeated assertion that Mr. Taurel was "*personally* involved" in efforts to bribe a foreign official or agent in order to secure governmental approval to market Prozac in Sweden. Even taking Mr. Virapen at his word, his testimony does not support such a dramatic contention. Rather, Mr. Virapen testified that Mr. Taurel informed Mr. Virapen that his job depended on getting Swedish regulatory approval for Prozac. There is nothing in this testimony to support Plaintiff's counsel's characterization that Mr. Taurel was "*personally* involved" in bribery. In fact, Mr. Virapen testified that he never spoke of bribery with Mr. Taurel, and Mr. Virapen undertook the alleged bribery on his own initiative.

 Plaintiff's counsel further plays loose with words when he contends that "Taurel *personally*, directed [Virapen], as head of Lilly's operations in Sweden, to discover the identity of the confidential consultant in charge of advising the Swedish government about the possible licensure of [Prozac] and to do 'whatever was necessary' to help in 'oiling the wheels' for Lilly." *See* Response, at 4. Remarkably, the phrase "oiling the wheels" was not

4

uttered by Mr. Taurel – even Mr. Virapen does not assert that Mr. Taurel used this phrase. Rather, this phrase purportedly appears in a "thank you note" written by the alleged bribee! It surely does not serve the credibility of Plaintiff's counsel to so clearly imply in his brief that Mr. Taurel instructed Mr. Virapen to "oil the wheels" and then drop a footnote acknowledging that this is not the case.

Now, parsing through Plaintiff's counsel's arguments and addressing the actual assertions raised by Mr. Virapen, the court returns, as it must, to a consideration of relevance. Although Plaintiff's counsel asserts that "any questions regarding the relevance of Mr. Taurel's prospective testimony are simply premature," *see* Response, at 2, the Federal Rules of Civil Procedure instruct otherwise. *See* Fed. R. Civ. P. 26(b)(1) ("For good cause, the court may order discovery of any matter *relevant* to the subject matter involved in the action. *Relevant* information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.") (emphasis added). Plaintiff's counsel's argument puts the cart before the horse. Plaintiff's response does not explain at all why any issues related to Swedish regulatory approval of Prozac have anything to do with Plaintiff's allegations in the instant litigation, other than to baldly assert that "any evidence that tends to show the degree to which Lilly would go to launch and price Prozac is relevant to an assessment of its behavior." *See* Response, at 11. The court simply does not agree with Plaintiff's counsel's perception of the scope of relevant evidence.

5

Although Plaintiff's counsel attaches two memos to its response and refers to Mr. Virapen's testimony that "they" said that "two patients tried to commit suicide," and then "all hell broke loose and people started coming in and out," significantly, Plaintiff's counsel fails to tie this testimony to the alleged bribery scheme or any other reason to depose Mr. Taurel. Rather, this argument reveals Plaintiff's counsel's strategy of attempting to bootstrap any allegation raised in the complaint or any memo secured in discovery, to justify a deposition of Lilly's Chief Executive Officer. Interestingly, this is precisely what the concept of "apex" depositions is designed to protect against, and the court turns next to that argument.

The court disagrees that because the events in question occurred twenty years ago when Mr. Taurel was not the Chief Executive Officer of Eli Lilly & Company that he is not entitled now to consideration as an "apex" deposition. Contrary to Plaintiff's assertions, considerations of an "apex" deposition do not "immunize" corporate executives from discovery practice. Rather, a plaintiff must show that the executive would have personal knowledge of the events in question and a plaintiff has no other means of obtaining the information. Plaintiff's counsel, here, has not even attempted to explain how the proposed deposition of Mr. Taurel fits these circumstances.

6

For all of the foregoing reasons, the court DENIES Plaintiff's motion to vacate [55-1].

**IT IS SO ORDERED** this 1st day of June 2007.

                                              s/ J. Owen Forrester
                                                 J. OWEN FORRESTER
                                  SENIOR UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)